**IT IS SO ORDERED.**

**SIGNED THIS: April 28, 2020**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**
_____


## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| I80 EQUIPMENT, LLC, ) | **Case No. 17-81749** |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| JEANA K. REINBOLD, NOT INDIVIDUALLY ) | |
| BUT SOLELY IN HER CAPACITY AS ) | |
| CHAPTER 7 TRUSTEE OF THE ESTATE OF ) | |
| I80 EQUIPMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Adv. No. 19-8116** |
| ) | |
| ROCK ISLAND COUNTY, ILLINOIS, ) | |
| TREASURER OF ROCK ISLAND COUNTY, ) | |
| ILLINOIS, AND COUNTY COLLECTOR OF ) | |
| ROCK ISLAND COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

### <u>ORDER</u>

The Defendants, Rock Island County and Louisa Ewert, Rock Island County Treasurer and Collector, have moved to dismiss the Complaint filed by the Plaintiff, Jeana K. Reinbold, Chapter 7 Trustee of the estate of I-80 Equipment, LLC (the "Debtor"), a business entity solely owned and managed by Erik P. Jones ("Jones"). The motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for failure to state a claim upon which relief may be granted.

In her Complaint, the Trustee alleges that the Debtor, within two years prior to filing its bankruptcy petition on December 6, 2017, used $177,945.35 of its funds to pay real estate taxes on certain parcels of real property located in Rock Island County that the Debtor had no interest in and thus received no value or benefit from the payments. She alleges that the transfers were made in exchange for value provided to Jones and/or three other limited liability companies owned by him, those being Jones Lease Properties, LLC, J.P. Rentals, LLC and Jones Holdings, LLC (collectively, the "Jones Companies"), thereby implying that each parcel of real estate for which the taxes were paid by the Debtor was owned by Jones or one of the Jones Companies.

Attached to the Complaint as Plaintiff's Exhibit A, is a copy of an accounting record of the Debtor that lists 21 payments made to Rock Island County, its treasurer or collector, that total $177,945.35. Twenty payments are listed as having been made by credit card on 9/15/2017. The twenty-first and last payment is listed as having been made by check on 11/19/2017. The document is entitled "Due from Jones Lease Properties, LLC Register January 1, 2015 – July 31, 2019." Each individual payment line includes the descriptive reference "Jones Lease Interco." Paragraph 25(g) of the Complaint states: "The Fraudulent Transfers were concealed, as they were recorded in the Debtor's books, not as gifts, but as accounts receivable owing by Jones Lease. Jones Lease had no obligation to repay the Fraudulent Transfers to the Debtor."

Although the Complaint contains nine counts, only three theories of avoidance are alleged: Actual Fraud under §548(a)(1)(A), Constructive Fraud under §548(a)(1)(B) and Preferential Transfer Avoidance under §547(b). Since each transfer is alleged to have occurred within 90 days of bankruptcy, as shown on Plaintiff's Exhibit A, the same sum of $177,945.35 is sought to be recovered under the preference counts as well as the fraudulent transfer counts. The three theories of avoidance are repeated in substantially identical terms against each of the three Defendants.

2

As pointed out by the Trustee, the Defendants, in their motion, make certain factual assertions that go beyond or that contradict the allegations of fact set forth in the Complaint. The Trustee correctly notes that ordinarily, a motion to dismiss is not a vehicle for defendants to raise questions of fact, since courts are required to assume the truth of all well-pleaded factual allegations. When factual matters outside the complaint are asserted by a defendant in a motion to dismiss, a federal court is faced with a binary choice. *Berthold Types Ltd. v. Adobe Systems, Inc.*, 242 F.3d 772, 776 (7th Cir. 2001). It may exclude those matters and rule on the motion to dismiss without considering them, or it may treat the motion to dismiss as one for summary judgment and implement the procedures specified in Rule 7056. *In re Chapman*, 154 B.R. 267 (Bankr.N.D.Ill. 1993).   This Court sees no benefit, at this early stage of the litigation, to treating the motion to dismiss as one for summary judgment. Accordingly, for the purpose of ruling on the motion to dismiss, the Court hereby excludes the factual matters asserted by the Defendants that are outside of the Complaint.

To avoid dismissal, the Trustee's complaint must contain allegations that " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A claim survives a motion to dismiss if there are enough facts pled to put the defendant on notice and if those facts, taken as true, state a plausible legal claim. *Vesely v. Armslist LLC,* 762 F.3d 661, 664 (7th Cir. 2014).

Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. The required level of factual specificity rises with the complexity of the claim. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). The plaintiff must give enough details about the subject matter of the case to present a story that holds up under a standard of scrutiny that asks whether the events, as described, *could* have happened, not *did* they happen. *Id.* In straightforward cases, that will not be a particularly difficult burden to meet, whereas more complex cases will require more detail to give the opposing party notice of what the case is all about and to show how the dots should be connected. *Id.* at 404-05.

For purposes of their motion, the Defendants concede that the Complaint sufficiently alleges plausible claims for avoidance on the basis of actual fraud under §548(a)(1)(A) and constructive fraud under §548(a)(1)(B). (Doc. 11, pp. 1-2) They contend only that the Complaint fails to sufficiently allege that each of the Defendants is a party from whom the Trustee may recover the value of the avoided transfers under §550(a).

For her part, and apparently upon review of the real estate tax collection statutes and procedures cited by the Defendants, the Trustee now concedes that the Treasurer/Collector is a "mere conduit," acting as a collection agent for the individual taxing districts, who is neither an initial transferee nor an immediate or mediate transferee under §550(a). (Doc. 12, p. 2). See *In re Peregrine Fin. Grp., Inc.,* 589 B.R. 360, 377 (Bankr. N.D. Ill. 2018) (noting that the *Bonded* dominion and control test for determining whether a transferee is an initial transferee or a mere conduit has been widely adopted; referring to *Bonded Fin. Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir. 1988)). This concession by the Trustee as to the conduit status of the Treasurer/Collector means that dismissal may be granted as to Counts IV through IX, thereby removing the Treasurer/Collector as a Defendant in this adversary proceeding, leaving Rock Island County (the "County") as the sole Defendant and Counts I through III as the remaining causes of action.

A primary line of argument made by the Defendants concerns whether the Complaint plausibly asserts, with sufficient supporting factual allegations, that the County is the initial transferee, or an immediate or mediate transferee, as to whom liability accrues under §550(a) and, if so, the extent of the County's liability. The Defendants contend first, that the County is not a transferee at all and can have no liability, and second, that the County is a subsequent transferee that took the funds in good faith and without knowledge of any fraud and is thus shielded from liability. Third, the Defendants posit that the taxes in question were distributed to a number of taxing districts, none of whom other than the County are named as Defendants, that the relative share of the tax payments that the County received, the portion it had dominion and control over, is limited to 11.44% or $20,356.95 of the total, so that if it has liability its liability is limited to that amount and no more.

Accepting the conduit status for the Treasurer/Collector, reasons the Trustee, leads to the conclusion that the taxing bodies are the initial transferees, each liable only for its own allocated

portion of the tax proceeds, so that the County's liability is limited to the portion of the tax payments that it actually received for its own use. (Doc. 12, p. 2). The Court agrees with this reasoning. The Trustee has plausibly alleged that the County is the initial transferee of its share of the tax payments. Of course, the amount that the County actually received is an issue of fact for another day. That the Complaint does not calculate that percentage or amount does not make the cause of action implausible or defective in a way that would warrant dismissal. In addition, since the Trustee has plausibly pleaded that the County is the initial transferee, the "defense" available under §550(b)(1) to a subsequent transferee who takes for value, in good faith and without knowledge of voidability, is not applicable. Neither is it necessary for the Trustee to plead that the County was aware of the fraudulent nature of the tax payments. Initial transferees are saddled with strict liability under §550 without regard to their knowledge or intent.

It also follows that the Defendants are correct that any taxing district that received a portion of the tax proceeds paid by the Debtor is the initial transferee of such amounts. If the Trustee desires to avoid and recover those payments from the taxing districts, she must sue those districts. Suing the Treasurer/Collector and the County does not put at issue the tax payments paid to districts other than the County. The Court rejects, however, the Defendants' contention that the other districts are necessary parties to this adversary proceeding. They are not. Now that the mere conduit status of the Treasurer/Collector has been established, the payments to each taxing district are properly viewed as separate and unrelated transfers from the Debtor to each district as initial transferee. The Trustee may proceed separately against each taxing district if she chooses.

The Defendants' alternative theory that the facts alleged in the Complaint show that Erik Jones, Jones Lease, or any of the Jones Companies is the initial transferee, so that the County is not the initial transferee, and their reliance upon *Bonded Financial* as supporting that theory, is unfounded. Section 550(a) draws a distinction between a transferee of a transfer and one for whose benefit the transfer was made. That distinction implies that an entity who benefits from a transfer, as one who receives not the money but rather, e.g., a corresponding reduction in one's liability, is not a transferee. *Bonded Financial,* 838 F.2d at 895. Where, as here, a debtor's funds are transferred, tracing the flow of the funds by identifying everyone through whose hands the money passed, i.e. the chain of possession, will identify the possible candidates for the initial

transferee. But more than temporary possession is needed to be a transferee. *Id.* at 894. It is the first person in the chain who holds title in the sense of having the right to put the funds to his own purposes who is the initial transferee for purposes of §550(a). *In re Smith,* 811 F.3d 228, 244 (7th Cir. 2016). One who had possession of the funds, but not dominion and control, is a mere conduit and, as such, cannot be the initial transferee.

The flow of funds matters. In order to be a transferee under §550, as distinguished from a non-transferee who incurs liability as one who benefits from the transfer, receipt and possession of the transferred property is necessary. *Rupp v. Markgraf,* 95 F.3d 936, 941 (10th Cir. 1996). An owner or officer of a company who has the power to transfer the company's funds is not a transferee unless he receives and possesses the funds, such as by having them deposited into his personal bank account. *Matter of Walldesign, Inc.,* 872 F.3d 954, 964-965 (9th Cir. 2017) (summarizing the "majority approach"). If he simply causes the company to make a payment from the company's account directly to a third party, even if for his personal benefit, he is not a transferee but, instead, is one for whose benefit the transfer was made. *Id.; Rupp,* 95 F.3d at 941. Since he is not a transferee at all, he cannot be the initial transferee.

The Defendants rely on the example used by the court in *Bonded Financial* that *"When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded."* 838 F.2d at 893. But in that hypothetical B was acting as agent for C, the initial transferee, which supports the conclusion that the Treasurer/Collector, as collection agent for the taxing districts, "may be disregarded" for purposes of determining the initial transferee. In the hypothetical, the agent's principal, "C," as the first party in the chain of possession with dominion and control, is the initial transferee. Defendants argue that in the Trustee's Complaint the Treasurer/Collector was B, the agent, who was acting, not on behalf of the taxing districts, but on behalf of Jones or Jones Lease. The Complaint contains no such allegation. Moreover, the Defendants in their filings contend, correctly as a matter of Illinois law, that the Treasurer/Collector serves as an agent for the taxing districts who are the initial transferees. The Defendants cannot have it both ways. As alleged in the Complaint, Jones and Jones Lease are outside the chain of possession of the transferred funds, so each is, at most, a person or entity for whose benefit the transfers were made. They are not transferees for purposes of §550(a).

6

In further support of their contention that it is Jones or Jones Lease who is the initial transferee, the Defendants point to the allegations of the Complaint that the transfers were wholly made for the benefit of Jones and/or the Jones Companies as owners of the properties and by the fact that the Debtor booked the tax payments as intercompany loans to Jones Lease. The Defendants do not directly address the Trustee's allegation that Jones Lease had no obligation to repay the Debtor (Complaint par. 25(g)), other than noting in their argument that the County was a good faith transferee with no knowledge of how the transactions were characterized among Jones and the Jones Companies. (Doc. 11, p.6). In general, a borrower's promise to repay a loan can be reasonably equivalent value so long as the borrower has the financial ability to repay it. See *Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer,* 472 F.3d 943, 948 (7th Cir. 2007); *In re Central Illinois Energy Cooperative,* 2011 WL 5080147 at *6 (Bankr. C.D. Ill.). The allegation of the absence of a valid and enforceable obligation to repay certainly saves the Trustee from an argument that she pleaded herself out of court. Should the County choose to press the issue going forward, whether there was a repayment obligation and, if so, its value at the time it arose, are relevant questions of fact.

With respect to Count III brought against the County to recover the tax payments as preferential, the Trustee merely quotes the language of §547(b)(2) to the effect that the transfers were "to or for the benefit of a creditor for or on account of an antecedent debt(s) owed by the Debtor before such transfers were made," (Complaint, P. 33), without alleging any particular antecedent debt owed by the Debtor. Since the Defendants do not question the sufficiency of that allegation, Count III will stand as pleaded.

Finally, there is no merit to the equitable considerations asserted by Defendants that taxing bodies and the citizenry have a vital interest in real estate tax payments and would be unduly burdened by now having to refund tax revenues that have previously been spent. Sections 548 and 550 provide no handhold for such arguments.

For these reasons, it is hereby ORDERED as follows:

  1.  The Defendants' motion to dismiss the Complaint is Granted in part and Denied in part;

2.  The motion to dismiss is GRANTED as to Counts IV, V, VI, VII, VIII and IX and those counts are Dismissed;

3.  The Rock Island County Treasurer and Collector, and Louisa Ewert as holder of both offices, are Dismissed as Defendants;

4.  The motion to dismiss is DENIED as to Counts I, II and III against Rock Island County.

5.  The Defendant Rock Island County is given twenty-one (21) days to file an Answer to Counts I, II and III of the Complaint.

# # #